```
        IN THE UNITED STATES DISTRICT COURT
     FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

```
MATTHEW GORDON COBLE,          )
                               )
           Plaintiff,          )
                               )
    v.                         )     1:19CV628
                               )
ANDREW M. SAUL,                )
Acting Commissioner of Social  )
Security,                      )
                               )
           Defendant.          )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff, Matthew Gordon Coble, brought this action

pursuant to Section 205(g) of the Social Security Act (the

"Act"), as amended (42 U.S.C. § 405(g)), to obtain review of a

final decision of the Commissioner of Social Security denying

his claim for Disability Insurance Benefits ("DIB") and a Period

of Disability ("POD") under Title II of the Act, and his claim

for Supplemental Security Income ("SSI") under Title XVI of the

Act. The court has before it the certified administrative record[1]

and cross-motions for judgment. (Docs. 131, 133.)

---

[1] Transcript citations refer to the Administrative
Transcript of Record filed manually with the Commissioner's
Answer. (Docs. 9-127.)

## I. **BACKGROUND**

Plaintiff filed applications for SSI, DIB and a POD, alleging a disability onset date of March 1, 2011. (Tr. at 9242-9257.) The applications were denied initially and upon reconsideration. (Id. at 9164-9168, 9173-9184.) A hearing before an Administrative Law Judge ("ALJ") was held on August 15, 2017. (Id. at 9055-9101.)

After the hearing, the ALJ determined on December 13, 2017, that Plaintiff was not disabled under the Act. (Id. at 18-30.) Specifically, the ALJ concluded at steps one and two that Plaintiff had not engaged in substantial gainful activity during the relevant period, and his severe impairments included generalized anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), panic disorder, major depressive disorder, history of right femur fracture, osteoarthritis of the right hip, and substance abuse disorder. (Id. at 21.) At step three, the ALJ concluded that the impairments, either alone or in combination, did not meet or equal a listed impairment. (Id. at 21-23.)

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work, except that he could occasionally operate foot controls with the right lower extremity; could occasionally climb ramps or stairs; could never

climb ladders, ropes, or scaffolds; could frequently balance, stoop, kneel, crouch, or crawl; must avoid concentrated exposure to moving machinery and hazardous machinery, and unprotected heights; could perform simple, routine, and repetitive tasks in a low-stress job with only occasional decision-making and occasional changes in the work setting; could have no interaction with the general public and only occasional interaction with coworkers and supervisors. (Id. at 23.) The ALJ then found at steps four and five that Plaintiff was unable to perform his past relevant work, but there were jobs in the national economy he could perform. (Id. at 28-29.)

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision for purposes of review. (Id. at 7-12.) Plaintiff filed the present action on June 24, 2019. (Doc. 1.)

## II.  <u>LEGAL STANDARD</u>

Federal law authorizes judicial review of the Commissioner's denial of social security benefits. 42 U.S.C. § 405(g); <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing

- 3 -

court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation marks omitted).

In undertaking this limited review, this court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [his] past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful

- 5 -

activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, <u>i.e.</u>, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the [RFC][2]." <u>Id.</u> at 179.

Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so,

---

[2] The "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562. The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265. The "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<u>e.g.</u>, pain)." <u>Hines</u>, 453 F.3d at 562-63. An ALJ need not discuss every piece of evidence in determining the RFC. <u>See, e.g.</u>, <u>Matney v. Colvin</u>, No. 1:09-CV-229, 2013 WL 1788590, *3 (M.D.N.C. Apr. 26, 2013) (unpublished). What is required is "an accurate and logical bridge from the evidence to [the] conclusion." <u>Clifford v. Apfel</u>, 227 F.3d 863, 872 (7th Cir. 2000); <u>Matney</u>, 2013 WL 1788590, at *3.

the claimant does not qualify as disabled. Id. at 179-80.
However, if the claimant establishes an inability to return to
prior work, the analysis proceeds to the fifth step, which
"requires the [Government] to prove that a significant number of
jobs exist which the claimant could perform, despite [the
claimant's] impairments." Hines, 453 F.3d at 563. In making this
determination, the ALJ must decide "whether the claimant is able
to perform other work considering both [the claimant's RFC] and
[the claimant's] vocational capabilities (age, education, and
past work experience) to adjust to a new job." Hall, 658 F.2d at
264-65. If, at this step, the Government cannot carry its
"evidentiary burden of proving that [the claimant] remains able
to work other jobs available in the community," the claimant
qualifies as disabled. Hines, 453 F.3d at 567.[3]

## III. **ANALYSIS**

Plaintiff's sole argument is that the RFC finding was
flawed pursuant to Mascio v. Colvin, 780 F.3d 632 (4th Cir.
2015), and that remand is proper, because the ALJ "fail[ed] to
include [Plaintiff's] limitations in concentration, persistence

---

[3] A claimant thus can qualify as disabled via two paths
through the five-step sequential evaluation process. The first
path requires resolution of the questions at steps one, two, and
three in the claimant's favor, whereas, on the second path, the
claimant must prevail at steps one, two, four, and five.

or maintaining pace ["CPP"] in his [RFC] despite finding that he suffered from moderate difficulties in those areas." (Doc. 132 at 8.) As explained below, Plaintiff's argument fails.

In Mascio, the Fourth Circuit directly addressed the relationship between a moderate limitation in CPP and the inclusion of simple, routine, and repetitive tasks and/or unskilled work in the RFC and hypothetical question. 780 F.3d at 638. Specifically, the Fourth Circuit held as follows:

> [W]e agree with other circuits that an ALJ does not account "for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits). As Mascio points out, the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in [CPP].
>
> Perhaps the ALJ can explain why Mascio's moderate limitation in [CPP] at step three does not translate into a limitation in Mascio's [RFC]. For example, the ALJ may find that the [CPP] limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. See id. at 1181. But because the ALJ here gave no explanation, a remand is in order.

Mascio, 780 F.3d at 638. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why moderate difficulties in CPP did not translate into a

- 8 -

limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary.[4] Id.

Beyond this, the Fourth Circuit has recently reiterated that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in [CPP] as a specific limitation in the RFC." Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020). Relying on Mascio, the plaintiff in Shinaberry argued that the ALJ erred in the mental RFC determination "because the ALJ did not include Shinaberry's 'moderate limitations in concentration, persistence or pace' . . . in the RFC or the hypothetical question posed to the vocational expert." Id. The Fourth Circuit affirmed the ALJ's decision, explaining that "the ALJ discussed in detail the psychological evaluations . . . [and] Shinaberry's adult function report, and sufficiently explained why the mental limitation to simple, routine, and repetitive tasks accounted for Shinaberry's . . . moderate limitations in her concentration, persistence or pace." Id.

---

[4] The Social Security Administration has clarified that a "moderate" rating means that the individual has a "fair" ability to sustain concentration, persistence, or pace "independently, appropriately, effectively" and "on a sustained basis." See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2).

- 9 -

In the instant matter, the ALJ determined at step three that the claimant had moderate limitations in CPP. (Tr. at 22.) In support, the ALJ's assessment, in its entirety, was

> With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. He testified that his psychiatric impairments resulted in low energy level and poor concentration. The claimant further reported that he had to re-read things because of his decreased attention span. The claimant had a diagnosis of ADHD but he showed no impulse control or attentional deficits when examined in 2015 (Ex. 2F). A December 2015 psychiatric follow-up report documented the claimant's reports of anxiety with panic attacks occurring twice per week. He also endorsed difficulty sustaining concentration though his sleep was improved with medication. The claimant displayed an anxious mood but intact attention and coherent thoughts when examined (Ex. 7F).

Id.

"Pursuant to Mascio, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." See Talmo v. Comm'r, Soc. Sec., Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015) (unpublished). Here, the ALJ explains why the mental limitations set forth in the RFC sufficiently account for Plaintiff's moderate limitations in CPP, thus remand is improper.

- 10 -

Specifically, the ALJ explained the significant weight[5] she assigned to the opinions rendered by state agency psychological consultants Arne Newman, Ph.D., and Richard Kasper, Ph.D., who reviewed the evidence at the initial and reconsideration levels of administrative review. (Tr. at 26-27.) Drs. Newman and Kasper opined that Plaintiff retained the mental ability to carry out very short and simple instructions and maintain attention and concentration for two hours at a time as required for the performance of simple tasks and likely more complex work. (Id. at 9110, 9121, 9141, 9159.) The ALJ explained that the opinions of Drs. Newman and Kasper merited significant weight because they were medical experts who were "well familiar with program rules and the expected limitations of impairments who had the opportunity to review a substantial portion of the medical evidence of record."[6] (Id. at 27.) The ALJ further noted that their opinions were consistent with the evidence entered into the record after they conducted their reviews, which showed that Plaintiff's condition remained "on a stable, steady course" and

---

[5] The significant weight given by the ALJ is limited to the state agency psychologists' mental RFC assessments. (Tr. at 27.)

[6] See also 20 C.F.R. §§ 404.1513a(b)(1); 416.913a(b)(1) (explaining that state agency consultants are "highly qualified" physicians and psychologists who are also "experts in Social Security disability evaluation").

- 11 -

was not "materially different now than it was at the time the opinions were rendered." (Id.) These opinions provide strong support regarding the ALJ's conclusion that Plaintiff could perform a range of simple work set forth in the RFC despite his moderate CPP limitation. See Sizemore v. Berryhill, 878 F.3d 72, 81 (4th Cir. 2017) (holding that the opinions of the state agency psychological consultants "provided substantial support for the ALJ's finding that, despite [plaintiff's] overall moderate difficulties with concentration, persistence, or pace, he would nonetheless be able to stay on task while performing [work within the parameters of the RFC]").

In further assessment of Plaintiff's mental impairments, the ALJ also discussed the opinion of licensed psychologist Amy Johnson, Ph.D., who examined Plaintiff in April 2015. (Tr. at 24-25, 9363-9367.) Plaintiff reported that his daily activities included reading books, lying in bed, and completing chores. (Id. at 9364.) He further stated that he bathed, groomed, and cooked without assistance, maintained a valid driver's license and drove as needed, could spend money appropriately, and described his relationships with others as "positive and productive." (Id.) Dr. Johnson observed that Plaintiff exhibited good hygiene and grooming, he was polite, cooperative, and oriented, and he was able to understand and follow directions.

- 12 -

(Id. at 9364-9365.) Despite a mildly anxious mood and a self-described "distorted" feeling, Plaintiff had no difficulties in maintaining eye contact, he had unremarkable speech and motor activity, and his flow of thought was organized and goal-oriented. (Id. at 9365.) Plaintiff also had average intellectual ability, fair judgment, and adequate insight. (Id. at 9366.) His working memory appeared intact, and he displayed adequate attention and concentration. (Id. at 9365.)

Dr. Johnson opined that while Plaintiff "may be able to understand, retain, and follow instructions and to perform simple, routine, repetitive tasks[,] his current functioning may limit his ability to maintain concentration, persistence, and pace." (Id. at 9366.) She further found no evidence that Plaintiff would be unable to interact with peers and coworkers or respond appropriately to supervision. (Id.) She also reported that Plaintiff "appear[ed] to be somewhat self-sufficient personally, socially and in regards to his occupational endeavors." (Id.) The ALJ assigned significant weight to Dr. Johnson's opinion as it was "consistent with her own mental status findings and [Plaintiff's] ongoing psychiatric treatment with primarily stable symptoms." (Id. at 27.)

The ALJ also considered Plaintiff's testimony and overall longitudinal mental health treatment history when formulating

- 13 -

the RFC finding. (Id. at 23-26.) Plaintiff testified that since separating from his last job in 2012 as a financial analyst, he had developed insomnia and increased anxiety restricting him primarily to his home. (Id. at 9062-9064.) Plaintiff reported that a physical injury from a car accident when he was 20 years old "start[ed] to play into [his] anxiety." (Id. at 9066.) He testified to experiencing 10 panic attacks per month, each lasting a minimum of 30 minutes. (Id. at 9071.) He also reported having low energy, poor concentration, and a decreased attention span causing him to "re-read" things. (Id. at 9067-9069.) The ALJ found that Plaintiff's medically determinable impairments could reasonably produce his alleged symptoms, however, his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record[.]" (Id. at 24.)

As the ALJ discussed, the record showed that Plaintiff received medication management and psychotherapy for generalized anxiety disorder, ADHD, narcotic addiction, insomnia, and chronic pain syndrome.[7] Although he described debilitating

---

[7] (Tr. at 26, 9370, 9385-9422, 9432-42, 9574-9668, 9746-9843.)

anxiety and insomnia, Plaintiff reported several times to his medical providers that his symptoms were manageable with medication.[8] In September 2015, after aggressive behavior towards his parents, Plaintiff was transported to the emergency room and subsequently transferred to a psychiatric hospital for evaluation and detoxification of opioid medication. (Id. at 9669-9726.) The ALJ accurately noted that Plaintiff's brief exacerbation in symptoms was directly precipitated by his substance abuse. (Id. at 25-26, 9697, 9746, 9835.) As the ALJ explained, subsequent treatment records confirmed that Plaintiff's condition eventually regulated again once he became sober and resumed his medication regimen. (Id. at 26, 9746-9843.) He did, however, have another hospitalization encounter for intoxication and aggressive behavior in June 2017.[9] (Id. at 26, 36-9054, 9863-10002.)

The ALJ also pointed out that Plaintiff's mental status examinations throughout the relevant period were generally

---

[8] (See, e.g., Tr. at 9387, 9390-9391, 9394, 9413, 9442, 9594, 9771, 9781, 9806, 9811, 9814, 9826-27.)

[9] Most of Plaintiff's administrative record concerns his treatment for a gunshot wound as a result of the June 2017 incident. (See Tr. at 36-9054, 9863-10002.) Plaintiff concedes that his injuries related to his gunshot wound are irrelevant to his disability claims. (See id. at 9070.)

- 15 -

normal. (Id. at 26.) Except for mild irritability or an anxious mood, Plaintiff routinely exhibited normal speech, a logical and goal-directed thought process, unremarkable thought content, fair insight and judgment, intact recent and remote memory, grossly intact orientation and cognition, and adequate concentration.[10] Ultimately, the ALJ recognized that Plaintiff's impairments "provide for limitations in his abilities as evidenced" by the medical record and hearing testimony, but concluded that Plaintiff's "conditions [were] not totally debilitating." (Id. at 26.)

Finally, the ALJ also acknowledged the findings of Plaintiff's neurologist, Dr. David Marks, who advised in 2015 that Plaintiff had decreased his opioid use but continued "to be severely disabled by his anxiety disorder, with ongoing somatic symptoms, isolation, and inability to engage in goal[-]oriented activity beyond the home." (Id. at 25 (citing Tr. at 9386).) The ALJ gave little weight to Dr. Marks' statement that Plaintiff's anxiety disorder was severely debilitating, finding that it was unclear whether it was based on anything but Plaintiff's "own subjective reports." (Id. at 27.) Furthermore,

_____

[10] (Tr. at 26, 9388, 9392, 9396, 9399, 9402, 9406, 9411, 9414, 9419, 9423-24, 9479, 9577, 9595, 9609, 9624, 9636, 9639, 9662, 9695, 9747, 9760, 9765, 9770, 9775, 9780, 9785, 9791, 9797, 9803, 9810, 9818, 9825, 9831, 9839-40, 9880.)

the ALJ found that Dr. Mark's statement was inconsistent with "the totality of [Plaintiff's] mental status examination findings, largely benign in nature." (Id.)

In sum, when formulating the mental RFC finding, the ALJ discussed and considered Plaintiff's routine and generally conservative longitudinal treatment history, his mostly favorable response to medication management, his generally benign mental status findings, and the opinions of Drs. Marks, Johnson, Newman and Kasper. (Id. at 23-27.) In light of all of this, the ALJ's mental RFC finding was legally correct and well-supported by substantial evidence.

Plaintiff's arguments to the contrary are unpersuasive. He contends that the ALJ failed to include a specific limitation in the RFC addressing Plaintiff's moderate limitation in CPP. (Doc. 132 at 8.) Plaintiff relies upon the ALJ's assignment of significant weight to Dr. Johnson's opinion, which, as previously discussed, found in part that Plaintiff's "current functioning may limit his ability to maintain concentration, persistence and pace." (See id. at 25 (citing Tr. at 9366).) This argument is flawed for several reasons. First, Plaintiff fails to point to any specific limitation that the ALJ should have included in the RFC and in the hypothetical question posed to the vocational expert.

- 17 -

Second, the ALJ was not required to include a further limitation in the RFC addressing Plaintiff's moderate limitation in CPP. Instead, the Fourth Circuit in Mascio, later reiterated in Shinaberry, requires the ALJ to adequately explain how the limitations in the RFC properly accounted for Plaintiff's moderate conditions in CPP. See Mascio, 780 F.3d at 638; Shinaberry, 952 F.3d at 121-22; see also Futch v. Saul, No. 5:19-CV-286-D, 2020 WL 5351603, at *4 (E.D.N.C. Aug. 17, 2020), report and recommendation adopted, No. 5:19-CV-286-3, 2020 WL 5351598 (E.D.N.C. Sept. 4, 2020) (unpublished) ("The discussion of mental limitations in the RFC in Shinaberry applies the same principle announced in Mascio: once an ALJ has found that a claimant is moderately limited in concentration, persistence, or pace, the ALJ should explain how such limitations are or are not accounted for in the RFC." (citation omitted)). As discussed above, the ALJ adequately explained why the limitation to simple, routine, repetitive tasks in a low-stress job with only occasional decision-making, occasional changes in the work setting, occasional interaction with coworkers and supervisors, and no interaction with the general public accounted for Plaintiff's moderate limitations in CPP. (Tr. at 23-27.)

Third, Plaintiff's argument is flawed because the ALJ's RFC findings are consistent with the significant weight given to

Dr. Johnson's opinion. When discussing Plaintiff's moderate limitations in CPP, the ALJ referenced Dr. Johnson's examination in which Plaintiff showed no impulse control or attentional deficits. (Id. at 22 (citing Tr. at 9365).) While Dr. Johnson opined that Plaintiff may have limitations in CPP, she found no further work-related mental limitations outside of Plaintiff's ability to understand, retain and follow instructions, and to perform simple, routine, repetitive tasks. (Tr. at 9366.)

Beyond that, even if Dr. Johnson's statement concerning CPP was construed as an additional functional limitation, the ALJ was not required to adopt every portion of Dr. Johnson's assessment even though the ALJ gave it significant weight.[11] To the contrary, the RFC determination is an issue reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2); see also Social Security Ruling 96-5p, Medical Source Opinions

---

[11] See Bacnik v. Colvin, No. 1:12-CV-801, 2014 WL 3547387, at *4 n.7 (M.D.N.C. July 17, 2014) (unpublished) (recognizing that an ALJ is not required to adopt every assessment in a report "even when according the report great weight overall") (citations omitted); Wilkinson v. Comm'r Soc. Sec., 558 F. App'x 254, 256 (3d Cir. 2014) ("[N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight."); Newsome v. Astrue, Civil No. 11-1141-CJP, 2012 WL 2922717, at *6 (S.D. Ill. July 17, 2012) (unpublished) (noting the fact that ALJ gave great weight to an opinion "does not mean that he was required to adopt it wholesale").

on Issues Reserved to the Commissioner, 1996 WL 374183, at *2
(July 2, 1996) (noting that "the final responsibility for
deciding [an individual's RFC] is reserved to the
Commissioner"). In formulating the RFC here, the ALJ took into
account Dr. Johnson's findings in addition to the other evidence
discussed above, all of which supports the ALJ's decision to
impose no greater restrictions than those posed in her
hypothetical question to the vocational expert and in the RFC.
(Tr. at 23-27). Plaintiff's argument thus fails.

Finally, the court notes that Plaintiff's suggestion that
greater RFC restrictions were required based on his subjective
testimony is without merit.[12] (See Doc. 132 at 11.) The ALJ
specifically discussed Plaintiff's own testimony that he
experienced poor concentration, a decreased attention span, and
difficulty staying on task. (Tr. at 24.) However, for the
reasons discussed in greater length above, the ALJ ultimately
concluded that the alleged extent of Plaintiff's symptoms was
not entirely credible. (Id.) Because the ALJ's conclusion is
well supported by substantial evidence, this argument too fails.

---

[12] Plaintiff does not directly challenge the ALJ's
assessment of Plaintiff's subjective complaints, and the court
finds no error regarding it. See 20 C.F.R. §§ 404.1529(a)-(c);
416.929(a)-(c); Social Security Ruling 16-3p, Evaluation of
Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016).

IV. **CONCLUSION**

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct and supported by substantial evidence. Plaintiff has established no grounds for relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, that Plaintiff's Motion for Judgment on the Pleadings, (Doc. 131), is **DENIED**, that Defendant's Motion for Judgment on the Pleadings, (Doc. 133), is **GRANTED**, and that this action is **DISMISSED WITH PREJUDICE.**

A Judgment dismissing this action will be entered contemporaneously with this Order.

This the 28th day of September, 2020.

_____
United States District Judge

- 21 -